FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA  2023 MAY -4  PM 1:40
JACKSONVILLE DIVISION

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

UNITED STATES OF AMERICA

v.

Case No. 3:23-cr-76-MMH-JBT
18 U.S.C. § 1349
18 U.S.C. § 371

ANA ROMERO,
JOSE MOLINA-HERRERA, and
DOROTHY THOMPSON-AVILA

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
### Wire Fraud Conspiracy
### (Universal Florida Construction LLC)

A.  Introduction

At all times material to this Indictment:

1.    Universal Florida Construction LLC ("Universal") was a limited
liability company registered with the Florida Department of State.   Universal was
created on or about October 10, 2018, and its principal place of business was at an
address in Orange County, in the Middle District of Florida.

2.    Records of the Florida Department of State reflect that the managing
member of Universal was defendant ANA ROMERO.

3.    Under Florida law, any contractor or subcontractor who engages in any
public or private construction must secure and maintain workers' compensation
insurance.   See Fla. Stat. §§ 440.10(1)(a) and 440.38(1).   A contractor must require a

subcontractor to provide it with evidence that it has workers' compensation insurance for its workers.   Fla. Stat. § 440.10(c).   Failure to maintain workers' compensation insurance is a felony.   Fla. Stat. § 440.105(4)(a) and (f).

4.      Proof of workers' compensation insurance is generally provided in the form of a Certificate of Liability Insurance declaring that the contractor or subcontractor has the insurance coverage.   The certificate generally only states that the contractor or subcontractor has workers' compensation insurance and does not include the number of workers or the amount of payroll covered by the insurance policy.

5.      Construction contractors and subcontractors entered into agreements with Universal, an individual with the initials O.M.A., and others, by which Universal facilitated the payment of workers, most of whom were undocumented aliens, for the contractors and subcontractors.   By facilitating the payment of the workers through Universal, which was a shell company, the contractors and subcontractors could disclaim responsibility for ensuring (1) that the workers were legally authorized to work in the United States, (2) that required state and federal payroll taxes were paid, and (3) that adequate workers' compensation insurance was provided.

B.   The Conspiracy

6.      From an unknown date, but beginning no later than on or about October 10, 2018, through on or about October 21, 2019, in the Middle District of Florida, and elsewhere, the defendants,

2

ANA ROMERO, and
DOROTHY THOMPSON-AVILA,

did knowingly and intentionally, combine, conspire, confederate, and agree with

each other, and other persons known and unknown to the Grand Jury, to transmit

and cause to be transmitted by wire in interstate commerce writings, signs, signals,

pictures, sounds, and communications, having devised and intended to devise a

scheme and artifice to defraud and for obtaining money and property by means of

false and fraudulent representations concerning workers' compensation insurance, as

more fully described herein, for the purpose of executing such scheme and artifice

and attempting to do so, in violation of 18 U.S.C. § 1343.

C.  Manner and Means of the Conspiracy

7.    The manner and means by which the conspirators carried out the

conspiracy and the scheme and artifice to defraud included, but were not limited to,

the following:

a.    On or about January 4, 2019, ANA ROMERO, on behalf of

Universal, caused to be submitted, by electronic transmission in interstate commerce,

a Florida Workers Compensation Application to NorGUARD Insurance Company

("NorGUARD") in the State of Pennsylvania, through Automatic Data Processing

Insurance Agency, Inc. (ADPIA), located in the State of New Jersey.   The

application falsely represented that the workers' compensation insurance would

cover an estimated annual payroll of $55,000.   NorGUARD is a subsidiary of

Berkshire Hathaway GUARD Insurance Companies ("GUARD").   GUARD maintains an on-line Policy Service Center with servers located in Pennsylvania.

      b.    The submission of the workers' compensation insurance application caused NorGUARD to issue a workers' compensation insurance policy to Universal covering the period from January 4, 2019, until January 4, 2020.   The annual premium for the policy was approximately $9,125, which was based on the information provided in the application, including the estimated payroll to be covered.

      c.    Although the workers' compensation insurance premium was based on the representation that Universal had a total annual payroll of $55,000, the conspirators "rented" Universal's Certificate of Liability Insurance ("COI") to construction contractors and subcontractors located throughout the Middle District of Florida, including contractors and subcontractors located in Duval, Clay, and St. Johns Counties in the Jacksonville Division of this District.

      d.    From on or about January 9, 2019, through on or about July 8, 2019, the conspirators requested, and caused to be requested, by electronic transmission in interstate commerce, approximately 99 COIs from ADPIA servers in the State of Georgia, and provided the COIs, and caused them to be provided, to contractors and subcontractors in the Middle District of Florida.   The purpose of providing the COIs to the contractors and subcontractors was to help carry out the scheme to defraud by falsely representing that Universal had sufficient workers' compensation insurance, as required by Florida law.

4

e.      The construction contractors and subcontractors wrote payroll checks to Universal for work performed during discrete pay periods.   During the conspiracy, the conspirators deposited, or caused to be deposited, into Universal's bank accounts approximately 849 checks, which totaled approximately $7,687,727, from contractors and subcontractors.   In addition, conspirators transferred $418,333 from another bank account controlled by conspirators into Universal bank accounts.

f.      Although NorGUARD believed it was providing coverage for the $55,000 of payroll reflected in the workers' compensation insurance application, the conspirators' actions caused NorGUARD to in fact provide coverage for approximately $7,687,727 in payroll.   If NorGUARD had known the amount of payroll it was in fact covering, it would have charged a premium of approximately $1,213,434.

g.      Of the approximately $7,687,727 in payroll checks deposited into the Universal bank accounts, the conspirators kept approximately 6% to 7% of the payroll amount, or an approximate total of more than $461,263, as a fee.

h.      After the payroll checks were deposited, ANA ROMERO withdrew large sums of cash and wrote checks, or caused checks to be written, to individual workers from the Universal bank accounts.   During the conspiracy, ANA ROMERO withdrew approximately $8,063,921 in cash from Universal bank accounts.   These monies, less the deduction of the fee kept by the conspirators, were then distributed, or caused to be distributed, by the conspirators to construction crew

5

leaders or their representatives.   Many of the workers were undocumented aliens working in the United States illegally.

        i.      The contractors and subcontractors writing payroll checks to Universal and the conspirators depositing those checks and distributing the payroll to the workers resulted in the concealment of the employment of undocumented aliens working illegally in the United States.

        j.      Neither Universal nor the contractors and subcontractors paid either the workers' portion or the employers' portion of state and federal payroll taxes, such as for Medicare and Social Security, to the appropriate government authorities, in violation of state and federal law.

        k.      Neither Universal nor the contractors and subcontractors provided adequate workers' compensation insurance for the workers, in violation of Florida law.

        l.      It was further part of the conspiracy that the defendants and others would perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

## COUNT TWO
### Conspiracy to Defraud the United States
### (Universal Florida Construction LLC)

#### A.    Introduction

1.    Part A of Count One of this Indictment is realleged and incorporated herein.

#### B.    The Conspiracy

2.    From an unknown date, but beginning no later than on or about October 10, 2018, through on or about October 21, 2019, in the Middle District of Florida, and elsewhere, the defendants,

ANA ROMERO, and
DOROTHY THOMPSON-AVILA,

did knowingly, and willfully conspire, combine, confederate, and agree with each other, and other persons known and unknown to the Grand Jury, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the United States Treasury in the ascertainment, computation, assessment, and collection of federal payroll taxes, specifically FICA taxes and federal income taxes.

#### C.    Manner and Means of the Conspiracy

3.    Part C of Count One of this Indictment is realleged and incorporated herein.

### D.   Overt Acts

4.     In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Middle District of Florida, and elsewhere:

a.     On or about October 10, 2018, Universal was formed and its articles of organization were filed with the state of Florida.   The articles of organization were electronically signed by ANA ROMERO and listed her as the company's manager and registered agent.

b.     On or about January 4, 2019, on behalf of Universal, ANA ROMERO entered a service contract with a payroll services company, misrepresenting that the total annual estimated wages for Universal would only be $55,000.

c.     On or about April 19, 2019, defendant DOROTHY THOMPSON-AVILA received a $10,000 check made payable to Universal, which she caused to be deposited into a Universal checking account, on or about April 21, 2019.

d.     On or about April 23, 2019, ANA ROMERO made cash withdrawals from three different Universal checking accounts, totaling approximately $24,200.

e.     On or about April 23, 2019, DOROTHY THOMPSON-AVILA delivered approximately $9,300 in cash to Person A.   This cash was the proceeds of

8

the check that she caused to be deposited on or about April 21, 2019, less a fee of approximately 7% charged by the conspirators.

  f. On or about July 1, 2019, defendant DOROTHY THOMPSON-AVILA received a $4,570.76 check made payable to Universal, which she caused to be deposited into a Universal checking account, on or about July 2, 2019.

  g. On or about July 3, 2019, ANA ROMERO made four cash withdrawals from Universal checking accounts, totaling approximately $66,851.

  h. On or about July 5, 2019, DOROTHY THOMPSON-AVILA delivered approximately $4,246 in cash to Person A.   This cash was the proceeds of the check that she caused to be deposited on or about July 1, 2019, less a fee of approximately 7% charged by the conspirators.

  i. On or about July 23, 2019, on behalf of Universal, ANA ROMERO caused to be filed with the IRS a Form 941, Employer's Quarterly Federal Tax Return, for the quarter ending in June 2019.   That Form 941 return reported that Universal had five employees with total wages, tips, and other compensation of $8,160.   During that same reporting period, the conspirators deposited and caused to be deposited payroll checks totaling approximately $3,815,182 into Universal bank accounts.

  All in violation of 18 U.S.C. § 371.

## COUNT THREE
**Wire Fraud Conspiracy**
**(All National Remodeling LLC)**

### A. Introduction

At all times material to this Indictment:

1.    All National Remodeling LLC ("All National") was a limited liability company registered with the Florida Department of State.   All National was created on or about May 1, 2019, and its principal place of business was at an address in Orange County, in the Middle District of Florida.

2.    Records of the Florida Department of State reflect that the managing member of All National was defendant JOSE MOLINA-HERRERA.

3.    Under Florida law, any contractor or subcontractor who engages in any public or private construction must secure and maintain workers' compensation insurance.   *See* Fla. Stat. §§ 440.10(1)(a) and 440.38(1).   A contractor must require a subcontractor to provide it with evidence that it has workers' compensation insurance for its workers.   Fla. Stat. § 440.10(c).   Failure to maintain workers' compensation insurance is a felony.   Fla. Stat. § 440.105(4)(a) and (f).

4.    Proof of workers' compensation insurance is generally provided in the form of a Certificate of Liability Insurance declaring that the contractor or subcontractor has the insurance coverage.   The certificate states only that the contractor or subcontractor has workers' compensation insurance and does not include the number of workers or the amount of payroll covered by the insurance policy.

10

5.      Construction contractors and subcontractors entered into agreements with All National, a person with the initials O.M.A., and others, by which All National facilitated the payment of workers, most of whom were undocumented aliens, for the contractors and subcontractors.   By facilitating the payment of the workers through All National, which was a shell company, the contractors and subcontractors could disclaim responsibility for ensuring (1) that the workers were legally authorized to work in the United States, (2) that required state and federal payroll taxes were paid, and (3) that adequate workers' compensation insurance was provided.

## B.   The Conspiracy

6.      From an unknown date, but beginning no later than on or about May 1, 2019, through on or about May 26, 2020, in the Middle District of Florida, and elsewhere, the defendants,

JOSE MOLINA-HERRERA, and
DOROTHY THOMPSON-AVILA

did knowingly and intentionally, combine, conspire, confederate, and agree with each other, and other persons known and unknown to the Grand Jury, to transmit and cause to be transmitted by wire in interstate commerce writings, signs, signals, pictures, sounds, and communications, having devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent representations concerning workers' compensation insurance, as

11

more fully described herein, for the purpose of executing such scheme and artifice and attempting to do so, in violation of 18 U.S.C. § 1343.

### C.  Manner and Means of the Conspiracy

7.      The manner and means by which the conspirators carried out the conspiracy and the scheme and artifice to defraud included, but were not limited to, the following:

a.      On or about June 11, 2019, JOSE MOLINA-HERRERA, on behalf of All National, caused to be submitted, by electronic transmission in interstate commerce, a Florida Workers Compensation Application to NorGUARD Insurance Company ("NorGUARD") in the State of Pennsylvania, through Automatic Data Processing Insurance Agency, Inc. ("ADPIA"), located in the State of New Jersey.   The application falsely represented that the workers' compensation insurance would cover an estimated annual payroll of $100,000.   NorGUARD is a subsidiary of Berkshire Hathaway GUARD Insurance Companies ("GUARD"). GUARD maintains an on-line Policy Service Center with servers located in Pennsylvania.

b.      The submission of the workers' compensation insurance application caused NorGUARD to issue a workers' compensation insurance policy to All National covering the period from June 12, 2019, until June 12, 2020.   The annual premium for the policy was $16,590, which was based on the information provided in the application, including the estimated payroll to be covered.   Of that annual premium, NorGUARD only received approximately $13,031.

12

c.    Although the workers' compensation insurance premium was based on the representation that All National had a total annual payroll of $100,000, the conspirators "rented" All National's Certificate of Liability Insurance ("COI") to construction contractors and subcontractors located throughout the Middle District of Florida, including contractors and subcontractors located in Duval, Clay, and Saint Johns Counties in the Jacksonville Division of this District.

d.    From on or about June 18, 2019, through on or about January 24, 2020, the conspirators requested, and caused to be requested, by electronic transmission in interstate commerce, approximately 124 COIs from ADPIA servers in the State of Georgia and NorGUARD Agency Service Center in the State of Pennsylvania, and provided the COIs, and caused them to be provided, to contractors and subcontractors in the Middle District of Florida.   The purpose of providing the COIs to the contractors and subcontractors was to help carry out the scheme to defraud by falsely representing that All National had sufficient workers' compensation insurance, as required by Florida law.

e.    The construction contractors and subcontractors wrote payroll checks to All National for work performed during discrete pay periods.   During the conspiracy, the conspirators deposited, or caused to be deposited, into All National's bank accounts approximately 1,564 checks, which totaled approximately $14,065,531, from contractors and subcontractors.

f.    Although NorGUARD believed it was providing coverage for the $100,000 of payroll reflected in the workers' compensation insurance application,

13

the conspirators' actions caused NorGUARD to in fact provide coverage for approximately $14,065,531 in payroll.   If NorGUARD had known the amount of payroll it was in fact covering, it would have charged a premium of approximately $2,255,661.

g.      Of the approximately $14,065,531 in payroll check deposited into the All National bank accounts, the conspirators kept approximately 6% or more of the payroll amount, or an approximate total of at least $843,931, as a fee.

h.      After the payroll checks were deposited, JOSE MOLINA-HERRERA withdrew large sums of cash and wrote checks, or caused checks to be written, to individual workers from the All National bank accounts.   During the conspiracy, JOSE MOLINA-HERRERA withdrew approximately $13,017,216 in cash, and wrote checks, or caused checks to be written, in the total amount approximately $1,002,001, payable to individuals from All National bank accounts. These checks and cash, less the deduction of the fee kept by the conspirators, were then distributed, or caused to be distributed, by the conspirators to construction crew leaders or their representatives.   Many of the workers were undocumented aliens working in the United States illegally.

i.      The contractors and subcontractors writing payroll checks to All National and the conspirators depositing those checks and distributing the payroll to the workers resulted in the concealment of the employment of undocumented aliens working illegally in the United States.

14

j.     Neither All National nor the contractors and subcontractors paid either the workers' portion or the employers' portion of state and federal payroll taxes, such as for Medicare and Social Security, to the appropriate government authorities, in violation of state and federal law.

k.     Neither All National nor the contractors and subcontractors provided adequate workers' compensation insurance for the workers, in violation of Florida law.

l.     It was further part of the conspiracy that the defendants and others would perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

## COUNT FOUR
### Conspiracy to Defraud the United States)
### (All National Remodeling LLC)

#### A.     Introduction

1.     Part A of Count Three of this Indictment is realleged and incorporated herein.

#### B.     The Conspiracy

2.     Beginning on an unknown date no later than on or about May 1, 2019, and continuing through on or about May 26, 2020, in the Middle District of Florida, and elsewhere, the defendants,

JOSE MOLINA-HERRERA, and

15

DOROTHY THOMPSON-AVILA

did knowingly, and willfully conspire, combine, confederate, and agree with each other, and other persons known and unknown to the Grand Jury, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the United States Treasury in the ascertainment, computation, assessment, and collection of federal payroll taxes, specifically FICA taxes and federal income taxes.

### C.    Manner and Means of the Conspiracy

3.    Part C of Count Three of this Indictment is realleged and incorporated herein.

### D.    Overt Acts

4.    In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Middle District of Florida, and elsewhere:

a.    On or about May 1, 2019, All National was formed and its articles of organization were filed with the state of Florida.   The articles of organization were electronically signed by JOSE MOLINA-HERRERA and listed him as the company's manager and registered agent.

b.    On or about June 11, 2019, on behalf of All National, JOSE MOLINA-HERRERA entered a service contract with a payroll services company, misrepresenting that the total annual estimated wages for All National would only be $100,000.

c.    Between on or about November 4 and 11, 2019, JOSE MOLINA-HERRERA made cash withdrawals from two different All National checking accounts, totaling approximately $425,300.

d.    Between on or about November 4 and 11, 2019, a person with the initials O.M.A. delivered approximately $70,000 in cash to Person B, who had caused checks to be deposited from contractors into an All National checking account.   This cash was the proceeds of the deposited checks, less a fee of approximately 6% charged by O.M.A.

e.    On or about December 7, 2019, JOSE MOLINA-HERRERA travelled to at least five different bank branches, making cash withdrawals from All National checking accounts.   His cash withdrawals on or about that date were approximately $278,000.

f.    Between on or about December 31, 2019, and January 10, 2020, JOSE MOLINA-HERRERA made cash withdrawals from two different All National checking accounts, totaling approximately $470,900.

g.    On or about January 3, 2020, O.M.A. delivered approximately $33,529 in cash to Person B, who had deposited checks from a contractor into an All National checking account.   This cash was the proceeds of the deposited checks, less a fee of approximately 6% charged by O.M.A.

h.    On or about January 4, 2020, O.M.A. directed a person with the initials H.C.M. to deliver approximately $97,500 in cash to Person B, who had deposited checks from contractors into an All National checking account.   This cash

17

was the proceeds of the deposited checks, less a fee of approximately 6% charged by O.M.A.

      i.     On or about January 11, 2020, DOROTHY THOMPSON-AVILA sent a text message to Person B with instructions to contact H.C.M. to coordinate the delivery of cash to Person B, who previously had caused the deposit of a $30,500 check from a contractor into an All National checking account.   Person B met with H.C.M. and received $41,180 in cash.   Later, a family member of O.M.A. retrieved approximately $12,510 from Person B.   The net amount of cash received by Person B, approximately $28,670, was the proceeds of the deposited check, less a fee of approximately 6% charged by the conspirators.

      j.     On or about January 13, 2020, having agreed to provide a COI and permit the use of a bank account to cash checks in exchange for 6% of those checks, O.M.A. sent a text message to Person B, attaching a COI that documented that All National had a workers' compensation insurance policy.

      k.     On or about January 15, 2020, on behalf of All National, JOSE MOLINA-HERRERA caused to be filed with the IRS a Form 941, Employer's Quarterly Federal Tax Return, for the quarter ending in December 2019.   That Form 941 return reported that All National had fifteen employees with total wages, tips, and other compensation of $14,170.   During that same reporting period, the conspirators deposited and caused to be deposited payroll checks totaling approximately $5,818,435 into All National bank accounts.

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1.      The allegations contained in Counts One and Three are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2.      Upon conviction of a conspiracy to violate 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1349, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3.      The property to be forfeited includes, but is not limited to, the following:

        a.      the sum of at least $1,213,434, which represents the proceeds of the offense charged in Count One; and

        b.      the sum of at least $2,255,661, which represents the proceeds of the offense charged in Count Three; and

        c.      $23,074 in United States currency, which was seized on February 15, 2020.

4.      If any of the property described above, as a result of any act or omission of the defendant:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

e.    has been commingled with other property which cannot be

divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21

U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,

Foreperson


ROGER B. HANDBERG
United States Attorney

By: _____

MICHAEL J. COOLICAN
Assistant United States Attorney

By: _____

KELLY KARASE
Assistant United States Attorney
Deputy Chief, Jacksonville Division

20

FORM OBD-34
5/3/23 Revised

No. _____

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Jacksonville Division

## THE UNITED STATES OF AMERICA

vs.

ANA ROMERO
JOSE MOLINA-HERRERA
DOROTHY THOMPSON-AVILA

## INDICTMENT

Violations: CTs 1 and 3: 18 U.S.C. § 1349
CTs 2 and 4: 18 U.S.C. § 371

A true bill,

_____
                    Foreperson

Filed in open court this ____4th____ day

of May, 2023.

_____
                    Clerk

Bail   $_____

GPO 863 525